UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

| | |
|---|---|
| MARIA FERGUSON ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 2:10-CV-245 |
| v. ) | |
| ) | Chief Judge Curtis L. Collier |
| WAL-MART STORES EAST, L.P., ) | |
| ) | |
| Defendant. ) | |

**M E M O R A N D U M**

Before the Court is Defendant Wal-Mart Stores East, L.P.'s ("Wal-Mart") motion for summary judgment (Court File No. 38). Plaintiff Maria Ferguson ("Plaintiff") has responded (Court File No. 47), and Wal-Mart has replied (Court File No. 49). For the reasons set forth in this memorandum, the Court will **DENY** Wal-Mart's motion for summary judgment (Court File No. 38).

**I.   RELEVANT FACTS**

This is a premises liability action, brought by Plaintiff to recover for injuries sustained on Saturday, October 31, 2009, when she allegedly slipped and fell on a wet substance on the floor of the Wal-Mart store in Johnson City, Tennessee. On that date, at approximately 5:00 p.m., Plaintiff, two of her children, her friend Carolyn Jackson, and Ms. Jackson's two grandsons, entered the Wal-Mart store. It had been raining heavily that day (Court File No. 47-4, p. 6).

Plaintiff walked down one of the busiest aisles of the store, an aisle referred to internally by Wal-Mart as "Action Alley" (Court File No. 47-5).[1] As she passed the "egg bunker," she slipped

---

[1] A Wal-Mart document titled "Action Alley - Strategic Maintenance" states most customer slip/trip/fall accidents in Action Alley occur between 11am and 9pm on Fridays, Saturdays, and Sundays.

and fell. She landed in a sitting position on the floor, with one leg pinned under the other (Court File No. 47-4, p. 3). Her left leg, arms, and back were in pain (*id.*). Plaintiff alleges a slippery substance on the floor caused her to fall. In her complaint, she describes this substance as broken eggs (Court File No. 1, ¶ 6). However, in subsequent statements, Plaintiff has stated she does not know whether the substance was eggs, water, or some other liquid (*see, e.g.*, Court File Nos. 38-1, p. 2; 47-4, p. 5). James Donnells, a Wal-Mart manager, saw the pool of liquid after Plaintiff fell, and describes it as water (Court File No. 47-9, p. 11). Whatever the liquid was, Plaintiff's pants were "soaked" with it after her fall (Court File No. 47-8, p. 7).

After being helped up from the floor by her friends, Plaintiff's friends walked her to a bench near the restrooms (Court File No. 47-4, p. 4). Ms. Jackson then went for help (Court File No. 47-8, p. 5). Shortly, Mr. Donnells arrived. He was accompanied by another Wal-Mart employee carrying a camera (Court File No. 47-3, p. 6). According to Plaintiff, this employee took two pictures of Plaintiff's knee (*id.*). Mr. Donnells and the other employee assisted Plaintiff in filling out an accident investigation document. In the meantime, Mr. Donnells directed another Wal-Mart employee to mop up the liquid (Court File Nos. 47-4, p. 5; 47-9, p. 11).

After Mr. Donnells was finished with the report, Plaintiff's friends procured a wheelchair for her. Plaintiff was wheeled over to the women's clothing department, where she purchased a new pair of pants to change into since hers were wet (Court File No. 47-8, p. 7). Ms. Jackson then drove her to the emergency room, where X-rays were taken (*id.* at p. 9; Court File No. 47-4, p. 6). Plaintiff was told to follow up with her doctor if pain persisted (Court File No. 47-4, p. 6). Pain did persist in Plaintiff's left knee, so she visited her doctor (*id.* at pp. 6-7). After some non-invasive treatments, including an MRI, Plaintiff's primary doctor eventually referred her for surgery. On April 27, 2010,

2

Dr. John Xerogeanes performed surgery on Plaintiff's left knee, and in the course of the surgery discovered she had a torn meniscus. Plaintiff claims this injury was caused by her fall at Wal-Mart (Court File No. 47-7, p. 2). At deposition, Dr. Xerogeanes testified Plaintiff's meniscal tear was consistent with falling, though he could offer no opinion on whether the tear was caused by the Wal-Mart fall in particular, or by either of two other incidents Plaintiff told him about where she had hurt the same knee (Court File No. 38-4, p. 22-23).[2] In September 2010, Plaintiff was examined by Dr. William Kennedy. In Dr. Kennedy's Independent Medical Examination ("IME") report, he states Plaintiff gave no history of any pain or injury to her left knee that required any treatment prior to the Wal-Mart fall (Court File No. 47-2, p. 6). The report goes on to state Dr. Kennedy's opinion, to a reasonable degree of medical certainty, that the meniscal tear was caused by the Wal-Mart fall (*id*. at p. 10).[3]

No videotape or photographic evidence of Plaintiff's fall in the Wal-Mart store exists. Approximately 201 digital surveillance video cameras were placed internally and externally at the Wal-Mart store at the time of Plaintiff's accident (Court File No. 47-14, pp. 3-4). In addition to the working cameras, "dummy" cameras were also placed around the store (*id*. at p. 7). The cameras

---

[2]In a 2008 incident, Plaintiff apparently tripped over a toy. In a 2010 incident, she apparently hit her knee on a table (Court File No. 38-4, p. 22)

[3]Plaintiff has submitted additional testimony from Dr. Kennedy, in the form of an affidavit (Court File No. 47-2, pp. 1-4). In the affidavit, Dr. Kennedy says he is aware of other incidents besides the Wal-Mart fall where Plaintiff hurt her knee, but it is his opinion to a reasonable degree of medical certainty that Plaintiff's meniscal tear came from the Wal-Mart fall. Dr. Kennedy provides reasons for why the other two knee injuries could not have caused the meniscal tear. The affidavit was not disclosed to Wal-Mart until over two months after the expert testimony disclosure deadline established by the Court's Scheduling Order (Court File No. 9) – not to mention over one month after the close of all discovery, and 18 days after the submission of Wal-Mart's motion for summary judgment. Accordingly, in consideration of Fed. R. Civ. P. 26(a)(2), the Court will not regard the affidavit.

3

can rotate, and can only see in the direction they are pointing at the moment (*id*.). Consequently, Wal-Mart does not have 100 percent video coverage of the store (*id*.). Several cameras were located near the egg bunker in Action Alley, though it is not clear whether any live ones were pointed at the location of Plaintiff's fall (Court File No. 47-16, pp. 5-10). After Plaintiff's accident, former Wal-Mart Asset Protection Associate Donald Neary checked the surveillance cameras in the area for footage of the fall and found none, nor did he find footage of Plaintiff sitting on the bench near the restrooms after the fall (Court File Nos. 38-3, pp. 2-4; 47-16, p. 16). Former Asset Protection Coordinator Harry Harris prepared a "Grab-and-Go" file after the accident, and noted in the file that there was no video of the accident location (Court File No. 38-2, p. 3). Wal-Mart spokesperson Brandee Hambrick also testified Plaintiff's accident was not caught on video (Court File No. 47-14, p. 10).

Plaintiff has sued Wal-Mart to recover damages for her injuries, claiming Wal-Mart was negligent in allowing the slippery substance to be present on the floor. Wal-Mart has moved for summary judgment.

**Ii.     STANDARD OF REVIEW**

Summary judgment is proper if the movant shows, based on the materials in the record, "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). First, the moving party must demonstrate no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Leary v. Daeschner*, 349 F.3d 888, 897 (6th Cir. 2003). The Court views the evidence, including all reasonable inferences, in the light most favorable to the non-movant. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio*

4

*Corp.*, 475 U.S. 574, 587 (1986); *Nat'l Satellite Sports, Inc. v. Eliadis, Inc.*, 253 F.3d 900, 907 (6th Cir. 2001). However, the non-movant is not entitled to a trial based solely on its allegations, but must submit significant probative evidence to support its claims. *Celotex*, 477 U.S. at 324; *McLean v. 988011 Ontario, Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000). Should the non-movant fail to provide evidence to support an essential element of its case, the movant can meet its burden of demonstrating no genuine issue of material fact exists by pointing out such failure to the court. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989).

The moving party is entitled to summary judgment if the non-movant fails to make a sufficient showing on an essential element for which it bears the burden of proof. *Celotex*, 477 U.S. at 323. In short, if the Court concludes a fair-minded jury could not return a verdict in favor of the non-movant based on the record, the Court may enter summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986); *Lansing Dairy, Inc. v. Espy*, 39 F.3d 1339, 1347 (6th Cir. 1994).

### III.  ANALYSIS

Plaintiff's negligence claim is essentially one of premises liability. In Tennessee, "[b]usiness proprietors are not insurers of the patrons' safety. However, they are required to use due care under all the circumstances." *Blair v. West Town Mall*, 130 S.W.3d 761, 764 (Tenn. 2004). "Liability in premises liability cases stems from [the business's] superior knowledge of the condition of the premises." *McCormick v. Waters*, 594 S.W.2d 385, 387 (Tenn. 1980). In order for a business to be liable for negligence in allowing a dangerous condition to exist on the premises, "the plaintiff must prove, in addition to the elements of negligence, that :1) the condition was caused or created by the

owner, operator or his agent, or 2) if the condition was created by someone other than the owner, operator, or his agent, that the owner or operator had actual or constructive notice that the condition existed prior to the accident." *Blair*, 130 S.W.3d at 764.

**A. Notice**

Here, Plaintiff offers no proof Wal-Mart caused the slippery condition on the floor.[4] Neither does Plaintiff allege Wal-Mart had actual knowledge of the puddle that allegedly caused her fall. Thus, assuming the other elements of negligence are met, Wal-Mart's liability turns on whether or not it had constructive notice of the slippery condition. Wal-Mart argues Plaintiff has adduced no proof tending to show constructive notice. The Court disagrees.

According to Wal-Mart, Plaintiff cannot show constructive notice because she cannot show "the dangerous or defective condition [i.e. the slippery substance] existed for such a length of time that the defendant, in the exercise of reasonable care, should have become aware of the condition." *Blair*, 130 S.W.3d at 764 (citing *Simmons v. Sears, Roebuck & Co.*, 713 S.W.2d 640, 641 (Tenn. 1986)). However, while it is true Plaintiff submits no proof as to the length of time the slippery substance had been on the floor, *Blair* outlined another way a plaintiff can show constructive notice, one Wal-Mart ignores. The Court in *Blair*, after reaffirming the longstanding "length of time" approach to showing constructive notice, went on to say:

> We take this opportunity to hold that in Tennessee, plaintiffs may prove that a premises owner had constructive notice of the presence of a dangerous condition by showing a pattern of conduct, a recurring incident, or a general or continuing condition indicating the dangerous condition's existence. This approach focuses directly on a principle firmly established in our case law – that a premises owner's

---

[4]Plaintiff at times speaks of Wal-Mart "causing" the slippery condition by failing to take steps to prevent its occurrence. However, this argument really goes towards constructive notice, not causation.

> duty to remedy a condition, not directly caused by the owner, is based on that owner's actual or constructive knowledge of the existence of the condition. It simply recognizes the logical conclusion that, when a dangerous condition occurs regularly, the premises owner is on a constructive notice of the condition's existence. This places a duty on that owner to take reasonable steps to remedy this commonly dangerous condition. Allowing plaintiffs to prove constructive notice in this manner relieves plaintiffs of the difficult burden of showing the duration of a particular occurrence so long as plaintiffs can show that the dangerous condition was part of a "pattern of conduct, a recurring incident, or a general or continuing condition" such that its presence was reasonably foreseeable to the premises owner.

130 S.W.3d at 765-66.

Here, Plaintiff has put forward evidence sufficient to raise a triable issue of fact as to whether the slippery condition of the floor was a "recurring incident," such that Wal-Mart was on constructive notice of its presence. As a threshold matter, it is undisputed that a liquid was on the floor where Plaintiff fell, and this liquid subsequently had to be mopped up by Wal-Mart personnel (Court File No. 47-9, p. 11). Plaintiff has also submitted internal Wal-Mart documents tending to show slippery floors were a regular occurrence during inclement weather, both generally and specifically in Action Alley. A Wal-Mart document titled "Inclement Weather Procedures" notes that areas of the store may pose a risk to customers during inclement weather (Court File No. 47-23). It instructs Wal-Mart employees to notify management when weather conditions have changed, place caution cones at entrances and exits to alert customers of slippery floors, place dry mops, buckets, and shop-vacs in strategic areas during bad weather, and monitor floors for water accumulation (*id.*). Additionally, a document titled "Action Alley - Strategic Maintenance" alerts employees to the heightened risk of accidents in Action Alley during peak hours, and specifically instructs them to be vigilant for spills (Court File No. 47-5, p. 1). Plaintiff's accident occurred during peak hours, and while it was raining heavily outside. According to Plaintiff, Wal-Mart had not placed caution cones warning of slippery conditions. Based on this evidence, and viewed in the

7

light most favorable to Plaintiff, a jury could reasonably infer slippery floors were a recurring dangerous condition during rain storms, and thus Wal-Mart was constructively on notice.

Additionally, Plaintiff has submitted a Wal-Mart document titled "General Liability Slip/Fall Claims and Incidents Inside Store # 1080 from 10/31/2006 to 10/31/2009" (Court File No. 47-24). This document has 37 entries, the last two of which are relevant to the present case. The last entry, dated 10/31/2009, describes Plaintiff's incident. The prior entry, dated 8/11/2009, describes a fall by a Wal-Mart customer named Bobbie Owens. Ms. Owens, like Plaintiff, fell in Action Alley. The claim description entry says "customer slipped in water from roof leak" (*id.*). Late in discovery, Wal-Mart produced Ms. Owens' case file, which shows it was raining at the time she slipped, there was a puddle of approximately 1/4 cup of water on the floor caused by a roof leak, and Ms. Owens hurt her knee when she fell (Court File No. 47-21, p. 6). At deposition, Wal-Mart store manager Keith Davidson testified he could not recall any problems with a leaky roof during 2009 (Court File No. 47-22, p. 3). However, a document later produced by Wal-Mart shows an emergency work order for roof repairs was placed by Wal-Mart on August 12, 2009. Although the legibility of the document is sub-optimal, it clearly mentions a recent "slip-and-fall" – presumably Ms. Owens' from the day before (Court File No. 47-21, p. 27). This evidence, viewed in the light most favorable to Plaintiff, raises at least a genuine issue of fact as to whether Wal-Mart was on notice of the possibility of dangerously slippery floors in Action Alley caused by a roof leak or leaks.

Based on both the general evidence of the recurring condition of slippery floors during rain storms, and the specific evidence of a leaky roof over Action Alley, the Court finds there is a genuine issue of material fact as to whether Wal-Mart had constructive notice of the slippery floor condition prior to Plaintiff's accident. Accordingly, Wal-Mart is not entitled to summary judgment

8

based on lack of notice.

   **B. Causation**

Wal-Mart also challenges the causation prong of Plaintiff's negligence claim, arguing Plaintiff cannot show her fall in the Wal-Mart store caused her torn meniscus. Wal-Mart relies exclusively on Dr. Xerogeanes' statement that he does not have an opinion as to whether Plaintiff's torn meniscus was caused specifically by her fall in the Wal-Mart. "As a general rule, the causation of a medical condition must be established by testimony from a medical expert. Such testimony is not sufficient to establish causation if it is speculative in nature. . . . A doctor's testimony that a certain thing is *possible* is no evidence at all." *Miller v. Choo Choo Partners., L.P.*, 73 S.W.3d 897, 901-02 (Tenn. Ct. App. 2001) (citation and quotation omitted). However, the Court notes that, at a minimum, Plaintiff has put forward evidence her fall caused *some* injury, even if only the short-term pain and medical expenses associated with Plaintiff's immediate visit to the Emergency Room. This is sufficient to support the causation element of Plaintiff's negligence action, regardless of whether there is any evidence the fall caused Plaintiff's meniscal tear.

Additionally, the Court notes there is evidence to support Plaintiff's claim the Wal-Mart fall caused her meniscal tear, namely, Dr. Kennedy's IME report. This report concludes "[t]he above described slip and fall of 10/31/09 caused the tear of the discoid lateral meniscus in Ms. Ferguson's left knee" (Court File No. 47-2, p. 10). Wal-Mart urges the Court to disregard the IME report, because the report says Plaintiff "gave no history of any pain or injury to her left knee that required any treatment prior to the slip and fall of 10/31/09" (*id*. at p. 6). According to Wal-Mart, this sentence indicates Plaintiff concealed prior incidents of hurting her knee from Dr. Kennedy, thus his opinion as to causation rests on unsound premises. However, the Court does not read this line

9

as indicating Plaintiff told Dr. Kennedy she had never had any knee pain whatsoever, but that she had never had any knee pain "*that required any treatment*" prior to her Wal-Mart fall. The Court is unaware of any proof Plaintiff received medical treatment for her knee prior to her Wal-Mart fall, thus the Court cannot conclude Dr. Kennedy's IME report, expressing his medical opinion the meniscal tear was caused by the Wal-Mart fall, is unreliable.

Accordingly, because Plaintiff has put forward evidence her fall in the Wal-Mart caused at least some injury, and because there is a genuine issue of fact whether the fall caused Plaintiff's meniscal tear, Wal-Mart is not entitled to summary judgment based on lack of causation.

IV. **CONCLUSION**

For the reasons stated above, the Court will **DENY** Wal-Mart's motion for summary judgment (Court File No. 38).

**An order shall enter.**

/s/
**CURTIS L. COLLIER**
**CHIEF UNITED STATES DISTRICT JUDGE**